**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO**

Civil Action No.

**KIMBERLY MARTINEZ**

    Plaintiff(s),

v.

**CITY AND COUNTY OF DENVER**

    Defendant(s).

_____

**COMPLAINT**

_____

1. Former Denver Police Department (hereinafter "DPD") Officer, Plaintiff, Kimberly Martinez (hereinafter "Officer Martinez,") by and through her undersigned counsel, hereby files the instant complaint against Defendant City and County of Denver, pursuant to the Age Discrimination and Employment Act (ADEA) and Title VII of the Civil Rights Act of 1964. 42 U.S.C.A. § 2000e; 29 U.S.C. § 6101.

## I.  PRELMINARY STATEMENT AND NATURE OF THE ACTION

2. The people of the City and County of Denver, the public, are a melting pot comprised of all walks of life, lending to the City's greatness and innovation. Women make up about 49.6% of the overall population of the Denver metropolitan area and 20% of the entire population, between the ages of 45-59 years of age.

3.      Within the context of public safety, this unique tapestry and amalgam requires a workforce that through skill, training, and lived experience may enforce the mandates of the law while undertaking the service of tending to the delicate social fabric and nuanced cultural needs of the City and the people who inhabit it. Critical to this objective is a diverse regiment of law enforcement officers of all races, genders, sexual orientations, ethnicities, and age. Above all, a commitment to a sincere life of service and conduct deserving of the public trust is required. Plaintiff to this action, former Denver Police Department Officer Kimberly Martinez, a military veteran, is one such officer who consistently provided this exemplary level of service.

4.      Yet there are chronic gender bias and discrimination issues in the Denver Police Department. See *Havard v. City and County of Denver*, Civil Action No. 1:24-cv-00733-SKC-CYC; *Lynette Nederhoed v. City and County of Denver*, Civil Action No.1:24-cv-03144-SBP.

5.      Following various degrees of gender bias and discrimination, some career female law enforcement officers depart the DPD in silence, others refuse to plumb the depths of this trauma without vocalization. Most of them, at the end of their faithful service, come to a painful realization they were simply tolerated within this fraternal order. Such is the culture of the DPD regarding gender.

6.      After nearly a decade of service, Officer Martinez, approximately 55 years old at the time, found herself pushed out of the DPD due to gender and age discrimination and retired on July 4, 2023-despite five to ten years remaining of eligible service. After being pushed out, her service continues, as Officer Martinez is now devoting her life to children in the foster care system

## JURISDICTION

7.      This Court holds jurisdiction over this action pursuant to 28 U.S.C. §1331 because this is a civil action arising under the federal statutory provisions of the ADEA and Title VII of the Civil Rights Act of 1964.

## VENUE

8. Venue is proper in the District of Colorado pursuant to 28 U.S.C. §1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred in this District.

## THRESHOLD MATTERS: CONDITIONS PRECEDENT

9. November 9, 2023, Officer Martinez timely filed an age and sex discrimination and retaliation charge with the Equal Employment Opportunity Commission (EEOC). On May 6, 2025, the United States Department of Justice issued a *Notice of Right to Sue*.

## PARTIES

10. At all times relevant to this Complaint, Plaintiff Kimberly Martinez served in the Denver Police Department as an officer and is a resident of Colorado.

11. Defendant City and County of Denver ("City") is a municipality/county duly constituted under the laws of Colorado, with its principal offices located at the City and County Building, 1437 Bannock St., Denver, CO 80202. The DPD operates as a department of the City.

## FACTUAL ALLEGATIONS

### A. Background: The Culture of Gender-Bias and Discrimination at the DPD

12. Defendant Denver Police Department, established in 1859 to maintain order in a mining camp, is the full-service police department for the City and County of Denver, Colorado, which provides police services to the entire county, including Denver International Airport, and may provide contractual security police service to special districts within the county.

13. Plaintiff, Officer Kimberly Martinez is a 57-year-old female retiring from the DPD on July 4, 2023.

14. In 2022, just 19.6% of the Denver Police Department's patrol staff were female though females make up 49.9% of Denver residents. *Audit Report,* Denver Police Department Police Operations and

3

Staffing, June 2023.

15. Since 2017, female officers have resigned at a disproportionate rate from the Denver Police Department, specifically, although female officers made up 19.6% of the department's patrol staff, **in 2022, the year immediately prior to Officer Martinez's early retirement, 23.4% of resignations as of November were by women**. *Id.*, emphasis added.

16. Gender issues within the DPD were so widespread, a Women's Collective at DPD was formed to advance gender inclusion and identify barriers of such at the DPD. To identify and summarize the issues a memorandum was drafted and circulated, presumably to form context and a common understanding of the patterns of gender-based bias taking place within the DPD.

17. The memorandum summarized and identified the issues of sex discrimination in the Department and provides in relevant part:

> "Sexism and misogyny, as well as other forms of degradation and discrimination, are omnipresent and rampant in the Denver Police Department; it is an extensive issue that deserves commensurate resources. The behaviors extend from the lesser acknowledged, everyday dismissiveness, including lack of recognition/credit stealing and talking over/ignoring, to the more obvious overt harassment, such as inappropriate touching. Women are often treated poorly and are meant to feel unsafe on a regular basis through harassment in the form of unwanted touching, blocking normal movement, verbal abuse, threats, and exclusion. Regardless of the form, the issues contribute to unhealthy, stressful work environments that are detrimental to the mental health of the women within DPD. It also maintains the wide gender gap that currently exists between men and women in leadership within the department."

18. The memorandum also outlined specific instances of sexual harassment, assault, and battery, including the following:

> a. "My Sgt. regularly caresses and plays with my hair and rubs my back. He has also grabbed my leg multiple times when we are sitting next to each other. This often happens in the presence of my Lt. and other Officers.

      b. "My Sgt. came up behind me and put his hands around my neck and pretended to choke me. He thought it was funny. Once he removed his hands, I placed mine next to my neck on instinct due to a trauma related reaction. He is aware of this trauma. He told me to chill out and put my hands down. It was just a joke."

19. Finally, the document outlines several climate concerns regarding microaggressions, derogatory language, and other inappropriate remarks:

> "Comments about women's bodies are made daily. The people that make these comments do it openly without any concern that they will be disciplined by superiors. People use the word tranny, faggot, he-she, cocksucker, retard, and other inappropriate/offense words on a daily basis."

### B. Officer Martinez: Gender and Age Based Double Standards and Retaliation

20. Officer Martinez, fifty-five years old at the time of retirement, and a military veteran of Latino heritage, served the City of Denver for nine years. Despite consistent commendations for her work, as she aged, without recognition nor opportunities for which she qualifies, she retired early from the DPD.

21. Made to appear incompetent, Officer Martinez's treatment and prospects for promotion were so bleak, after having been passed over numerous times for younger and/or male employees, despite having five to ten years left of service, she was forced to retire early from the DPD. In fact, upon information and belief, Officer Martinez was told she would be replaced with a **"new model."**

22. Despite the discrimination she faced, up until the very end of her employment with the DPD, she mentored junior officers and forged mutual respect with her new supervisor. Indeed, Officer Martinez' last supervisor while at DPD informed her that she was one of the best officers he worked with. However, passed over time-and-time again, the path for Officer Martinez was clear: she would not receive equitable work assignments in District 3 for which she qualified and thus no escape absent retirement.

23.     Officer Martinez's nine years of service with the DPD are characterized by little to no incidents, write-ups, or other disciplinary action. In fact, throughout her career service with the DPD, Officer Martinez's work and commitment were consistently commended by the Department, including by her direct supervisors.

24.     However, around 2021, while working in District 3 on the Power Shift Team, Officer Martinez first noticed shifts in attitude towards her, particularly by her then supervisor Sergeant Jeffrey DiManna (hereinafter "Sergeant DiManna"). Upon information and belief, other DPD employees cautioned Officer Martinez that she was being replaced with a "**new model**." Indeed, of all three of Officer Martinez's male partners, all had been promoted to corporal status-except Officer Martinez.

25.     Shortly thereafter, while in the field, on November 5, 2021, Officer Martinez conducted a traffic stop with a male subject holding a knife and/or cutting object. During the traffic encounter, the subject fled the traffic stop, escaping to a nearby townhome complex. Consistent with her training and the U.S. Constitution, Officer Martinez did **not** shoot the subject and pursued the subject on foot, deescalated the situation by convincing the subject to exit the townhome, then taking the subject into custody. However, following the incident with the subject, Sergeant DiManna, who upon information and belief has himself been investigated numerous times regarding his use of force against civilians, informed Officer Martinez that the degree of force and approach utilized in the incident was too lenient, that she should not have taken the subject into custody by herself.

26.     Upon information and belief, Sergeant DiManna then informed Officer Martinez that he would remove her from the District 3 Power Shift team entirely should she handle another incident in the same manner. Sergeant DiManna then took disciplinary action against Officer Martinez. Upon information and belief, Sergeant DiManna then called Officer Martinez into his office once more, informing her directly that he intended to kick her off the team.

27. Yet, immediately thereafter, in a similar scenario, when District 3 DPD Officer Pope, a male officer, also took a subject into custody by himself, Sergeant DiManna *praised* Officer Pope, **without** disciplinary action allegedly stating, "it's okay because Pope can take care of himself."

28. Upon information and belief, the working environment while under Sergeant DiManna's supervision and leadership was laden with overtones of bias and double standards as to age and gender. For instance, Officer Martinez was shamed for wearing the women's badge offered by the DPD to female officers.

29. Sergeant DiManna continued to characterize Officer Martinez as unfit for her position and incompetent, claiming that her partners felt in danger and that her colleagues perceive her as unapproachable - yet Officer Martinez's partners deny making such statements.

30. Unsurprisingly, Officer Martinez filed a discrimination complaint with the DPD's Internal Affairs Bureau (hereinafter "IAB") and was subsequently interviewed. Upon information and belief, an IAB DPD employee, a high school friend of Sergeant DiManna's, notified him of Officer Martinez's complaint.

31. Consequently, following her complaint of discrimination with IAB, upon information and belief, ever since March of 2022, Sergeant DiManna called Officer Martinez into his office on a weekly basis to remind her of her perceived incompetencies.

32. By April 7, 2022, just one month following Officer Martinez's complaint of discrimination, Sergeant DiManna placed Officer Martinez on a Performance Improvement Plan (hereinafter "PIP").

33. Highlighting the double standard, while handling subjects during an incident, on March 9, 2022, during a traffic stop, a female subject escaped from detainment while Officer Martinez was handling another suspect **with a team**. Despite working with a team, upon information and belief,

7

Officer Martinez is the only member of that team to receive a disciplinary write-up, often referred to as a "journal entry" and corrective training, purportedly and pretextually, because she handcuffed the suspects.

34. However, the other male team members present during the incident were **not** required to take corrective training. In sum, by April 7, 2022, following Officer Martinez's IAB complaint of discrimination, and the aforementioned incidents, Sergeant DiManna placed Officer Martinez on a four-month long PIP.

35. In the PIP, Sergeant DiManna, makes clear his underlying intentions, stating, "If however, Officer Martinez's officer safety and emotional intelligence does not improve, this Performance Improvement Plan can serve as documentation **for removal from the Power Shift Team**."

### B. A Dream Deferred: Passed Over and Pushed Out

36. Following the conclusion of the PIP period on July 15, 2022, it became obvious to Officer Martinez, that in fact and practice, there were little prospects of upward mobility in terms of her work assignments despite her qualifying for them.

37. Officer Martinez's work was constantly double-checked, and though she received a new supervisor, it occurred to her there was no path out of District 3. Though discouraged, her commitment to her service was clear to her new supervisor, who shared with Officer Martinez that she was one of the best officers he had worked with.

#### 1. Shift Versus Impact Team Assignments

38. During her last few months with the DPD, Officer Martinez noticed a distinct difference in her work assignments. One such difference in work assignments in District 3 is shift versus Impact Team work assignments.

8

39. The DPD's policy provides that anyone interested in receiving Impact Team assignments should submit a letter of interest.

40. The difference between shift and Impact work is substantial. Shift work, the category of work duties assigned to Officer Martinez, require dedicated hours, in Officer Martinez's case the graveyard shift of 9:00 P.M. to 7:00 P.M. During the established shift, all calls must be answered including domestic related calls, and the officer is committed to radio correspondence. There are additional distinctions in terms of requests for vacation or other time off. For instance, a shift officer must bid for vacation based on seniority and no comp days are available because of required minimums.

41. In stark contrast, the Impact Team provides unique support in NARCS, the officer is not committed to radio correspondence, there are no set hours, officers respond to the needs of the district, and builds Class 2 self-initiated arrests for the district. As to vacation and time-off, Impact Teams officers, unlike shift officers, are not required to bid for time off and the use of comp time is permitted.

42. Even after expressing an interest via written communication, in Impact Team work assignments, Officer Martinez was always assigned to shift assignments, even when Impact Team work for which she qualified was available.

43. In fact, approximately at or around May 1, 2023, a vacancy posting for the Impact Team position was announced. When Officer Martinez expressed interest in the position; she was informed, upon information and belief, that **"they will let the boys pick who they wanted to work with."**

44. In fact, upon information and belief, two male officers, both in their 20s and/or 30s, were indeed selected and assigned Impact Team work **over** Officer Martinez when neither submitted a written letter of interest.

9

45. Upon information and belief, Officer Martinez was also told the work assignments to the Impact Team were also at the discretion of the Commander. However, it appears that whatever discretionary authority held by the Commander, concomitant with the overall selection process, decisions were made based upon the basis of both age and gender.

46. As a result, despite having five to ten years remaining of service and recognition as an excellent officer by her new supervising officer, on July 4, 2023, Officer Martinez officially retired from the DPD, requesting that her retirement not be announced to avoid further retaliation during her final two months with the DPD

## COUNT ONE

### Discriminatory Termination Based on Age in Violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634.

47. Kimberly Martinez, Plaintiff to this action, restates and realleges each and every paragraph of this Complaint as if fully set forth herein.

48. Plaintiff was approximately 55 years old and qualified for her position when Defendant forced her early retirement.

49. Defendant is engaged in a pattern and practice of pushing out DPD employees close to retirement.

50. In addition, Defendant marginalized Plaintiff while treating younger and junior similarly situated employees more favorably.

51. Plaintiff suffered damages because of Defendant's unlawful discriminatory actions, including past and future lost wages and benefits and the costs of bringing this action.

52. Defendant willfully violated Plaintiff's rights under the ADEA and, as a result, are liable for liquidated damages.

## COUNT TWO

**Retaliation in Violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634.**

53. Kimberly Martinez, Plaintiff to this action, restates and realleges each and every paragraph of this Complaint as if fully set forth herein.

54. Plaintiff was 55 years old and qualified for her position when Defendant forced her early retirement.

55. From 2022 to 2023 Plaintiff engaged in protected activity by complaining to numerous DPD personnel, including IAB and EEO, regarding discriminatory treatment based on age and gender.

56. After Plaintiff complained of age discrimination, Defendant summarily forced plaintiff to retire on July 4, 2023, purportedly because she complained of discrimination

57. Plaintiff suffered damages because of Defendant's unlawful retaliatory actions, including past and future lost wages and benefits and the costs of bringing this action.

## COUNT THREE

**Sex Discrimination and Retaliation in Violation of Title VII of Civil Rights Act of 1964**

58. Kimberly Martinez, Plaintiff to this action, restates and realleges each and every paragraph of this Complaint as if fully set forth herein.

59. Defendants are a municipality and municipal police department and at all times relevant to this complaint were acting under color of state law.

60. In taking the actions described above, especially the actions of (i) treating Officer Martinez differently on the basis of gender (ii) stereotyping her, (iii) creating a harassing and hostile work environment and (iv) retaliating against her for opposing discrimination, Defendants violated Officer Martinez's rights under Title VII of the Civil Rights Act of 1964. Defendants took these actions knowing that they were unlawful or in reckless disregard of their unlawfulness.

61. Defendants' actions caused harm to Officer Martinez, a harm which Officer Martinez seeks to remedy through action authorized under Title VII of the Civil Rights Act of 1964.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

A. Award Plaintiff for her past and future loss of wages and benefits, plus interest;

B. Order Defendants to reinstate Plaintiff to a position comparable to her former position or, in lieu of reinstatement, award her front pay (including benefits);

C. Award to Plaintiff liquidated damages incurred in connection with this action;

D. Award to Plaintiff of compensatory and punitive damages associated with the retaliation claim;

E. Award to Plaintiff all costs and reasonable attorneys' fees incurred in connection with this action; and

F. Grant Plaintiff such additional or alternative relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Dated: July 3, 2025
Denver, Colorado

                                          Respectfully submitted,

                                          */s/ Jenipher R. Jones, Esq.*

Jenipher R. Jones, Esq.

For the People, LLC
110 16th Street
Suite 1400
# 1001
Denver, CO 80202
Fax: 720.796.9408
Tel. 720.459.9333 or 720.380.4408 (Direct)

**Counsel for Plaintiff Kimberly Martinez**

Case No. 1:25-cv-02060-STV   Document 1   filed 07/03/25   USDC Colorado   pg 13 of 13